UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THOMAS B., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, <br> ACTING COMMISSIONER OF <br> SOCIAL SECURITY,[1] <br><br> Defendant. | No. 20 CV 503 <br><br> Magistrate Judge McShain |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Thomas B. brings this action for judicial review of the Social Security Administration's (SSA) decision denying his application for benefits. For the following reasons, plaintiff's motion for summary judgment [17][2] is denied, the Acting Commissioner of Social Security's motion for summary judgment [25] is granted, and the SSA's decision denying plaintiff's application is affirmed.

**Procedural Background**

In February 2017, plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging a disability onset date of April 11, 2013. [13-1] 13. Plaintiff's claim was denied initially and on reconsideration. [*Id*.]. Plaintiff requested a hearing, which was held by an administrative law judge (ALJ) on September 28, 2018 and October 26, 2018. [*Id*.] 24-75. In a decision dated January 26, 2019, the ALJ found that plaintiff was not disabled and denied his application. [*Id*.] 13-19. The Appeals Council denied review on November 11, 2019, [*id*.] 1-6, making the ALJ's decision the agency's final decision. 20 C.F.R. §§ 404.955 & 404.981.

---

[1] In accordance with Fed. R. Civ. P. 25(d), Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as the defendant in this case in place of the former Commissioner of Social Security, Andrew Saul.

[2] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except for citations to the administrative record [13], which refer to the page numbers in the bottom right corner of each page.

Plaintiff timely appealed to this Court [1], and the Court has subject-matter jurisdiction to review the Acting Commissioner's decision under 42 U.S.C. § 405(g).[3]

## Legal Standard

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, the ALJ conducts a sequential five-step inquiry: (1) whether the claimant is unemployed; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the claimant's impairment meets or equals any listed impairments; (4) whether the claimant is unable to perform her past relevant work; and (5) whether the claimant is unable to perform any other available work in light of her age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

The Court reviews the ALJ's decision deferentially to determine if it is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019)). But the standard "is not entirely uncritical. Where the Commissioner's decision lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Brett D. v. Saul*, No. 19 C 8352, 2021 WL 2660753, at *1 (N.D. Ill. June 29, 2021) (internal quotation marks and citation omitted).

## Discussion

### A. The ALJ's Decision

At step one of her decision, the ALJ found that plaintiff had engaged in substantial gainful activity from his alleged onset date through his date last insured, June 30, 2016. [13-1] 15-16. The ALJ also found that, after June 30, 2016, there was no continuous twelve-month period during which plaintiff was engaged in no substantially gainful activity. [*Id.*] 17. Although these findings meant that plaintiff

---

[3] The parties consented to the exercise of jurisdiction in this case by a United States Magistrate Judge. [7, 10].

was not disabled, the ALJ proceeded to step two of the sequential analysis, where she concluded that plaintiff had no impairment or combination of impairments that significantly limited his ability to perform basic work activities. [*Id.*] 17-19. For that reason, too, the ALJ denied plaintiff's application for benefits. [*Id.*] 19.

Plaintiff argues that the ALJ's decision should be reversed and remanded for two reasons. First, plaintiff contends that the ALJ erred in evaluating the opinion of Dr. A. Stephen Genest, an independent medical expert who (plaintiff claims) testified at the hearing that plaintiff had a severe impairment that caused functional restrictions. [18] 2-3, 6-9. Second, plaintiff argues that the ALJ erred in concluding that he was engaged in substantial gainful activity after his alleged onset date. [*Id.*] 9-12. In support, plaintiff contends that the ALJ failed to address whether (1) plaintiff received a share of the profits generated by his dry-cleaning business only "because he owned the business," and "not because he performed any activities that were of value to the business"; (2) the work plaintiff performed after his onset date was comparable to that of an unimpaired worker; and (3) plaintiff's earnings were worth those of an unimpaired dry cleaner. [*Id.*] 10-12.

Having reviewed the ALJ's decision, the parties' briefs, and the relevant parts of the record, the Court concludes that substantial evidence supports the ALJ's finding that plaintiff engaged in substantial gainful activity after his alleged onset date and was not entitled to benefits.[4]

### B. Substantial Evidence Supports The ALJ's Finding That Plaintiff Engaged in Substantial Gainful Activity After The Alleged Onset Date.

Step one of the five-step sequential analysis requires the ALJ to consider if the claimant was engaged in substantial gainful activity. "Substantial work activity is work activity that involves doing significant physical or mental activities." 20 C.F.R. § 404.1572(a). "Gainful work activity" is work done for "pay or profit," even if no profit is realized. *Id.* § 404.1572(b).

"The commissioner has special rules for evaluating work activity by a self-employed person. If an individual is self-employed, his or her activities and their value to the business will be considered to determine whether the individual has engaged in substantial gainful activity." *Mickelson v. Astrue*, No. 09-cv-3-bbc, 2009 WL 4544126, at *2 (W.D. Wis. Nov. 25, 2009). The relevant regulation, *see* 20 C.F.R. § 404.1575, provides that the agency:

---

[4] Consequently, the Court need not address plaintiff's argument about the ALJ's handling of Dr. Genest's opinion. *See Jones v. Shalala*, 21 F.3d 191, 193 (7th Cir. 1994) ("If you are substantially gainfully employed, that is the end of your claim, even if you have compelling medical evidence that you really are disabled.").

3

> will consider your activities and their value to your business to decide whether you have engaged in substantial gainful activity if you are self-employed. We will not consider your income alone because the amount of income you actually receive may depend on a number of different factors, such as capital investment and profit-sharing agreements * * * We will evaluate your work activity based on the value of your services to the business regardless of whether you receive an immediate income for your services. We determine whether you have engaged in substantial gainful activity by applying three tests. If you have not engaged in substantial gainful activity under test one, then we will consider tests two and three. The tests are as follows:
>
>> (i) Test One: You have engaged in substantial gainful activity if you render services that are significant to the operation of the business and receive a substantial income from the business. Paragraphs (b) and (c) of this section explain what we mean by significant services and substantial income for purposes of this test.
>>
>> (ii) Test Two: You have engaged in substantial gainful activity if your work activity, in terms of factors such as hours, skills, energy output, efficiency, duties, and responsibilities, is comparable to that of unimpaired individuals in your community who are in the same or similar businesses as their means of livelihood.
>>
>> (iii) Test Three: You have engaged in substantial gainful activity if your work activity, although not comparable to that of unimpaired individuals, is clearly worth the amount shown in § 404.1574(b)(2) when considered in terms of its value to the business, or when compared to the salary that an owner would pay to an employee to do the work you are doing.

20 C.F.R. § 404.1575(a)(2)(i)-(iii).

A claimant will be found to "have engaged in substantial gainful activity if she satisfies any one of [these] three tests[.]" *Palmer v. Barnhart*, 40 F. App'x 278, 282 (7th Cir. 2002). "The burden is on [p]laintiff at step one to prove that she has not engaged in substantial gainful activity." *Lang v. Astrue*, No. 4:10-cv-16-RLY-WGH, 2011 WL 4538412, at *2 (S.D. Ind. Sept. 29, 2011).

Here, the ALJ applied Test One and found that plaintiff engaged in substantial gainful activity because he rendered significant services to the operation of his dry-cleaning business and received a substantial income from the business:

4

The claimant does not have reported earnings after his alleged onset date. However, the medical evidence reflects the claimant continued working at his dry cleaning business through at least February 1, 2017.

Accordingly, the undersigned requested and received the claimant's tax returns. They show that while the claimant's wife received a salary, there also was an "officer distribution." However, Form 1125E, which should have been included, which would detail the distribution, was not included.

At the first hearing, held on September 28, 2018, the claimant testified that in 2013 he had to hire someone to run the machines, his wife did the front end of things. The claimant would just sit and watch that person he hired, because he wanted to ensure the employee did not mess up his expensive machines. The claimant received payouts of $10,000 to 15,000 for his business.

Although the claimant testified that he hired someone to do the physical part of the business, his tax returns do not support that, as they show no wages to anyone other than a W2 for his wife for 2013. None of the tax years, 2013-2017, show any wages paid to anyone. In using the self-employment guidelines, per POMS DI 10510.015, a self-employed individual will have a substantial income from a business if: "Countable income" from the business averages more than the amount shown in the SGA Earnings Guidelines, or "Countable income" from the business does not average more than the amount referred to above, but the livelihood which he or she derives from the business is: comparable to that which he or she had before becoming seriously impaired, or comparable to that of unimpaired self-employed individuals in his or her community engaged in the same or similar businesses as their means of livelihood. Here, the business was the claimant's sole means of livelihood for a number of years before he became seriously impaired, and he continues to receive a comparable livelihood from it after becoming seriously impaired, thus, his income is considered substantial.

In looking at the claimant and his wife's tax returns, they received the same amount of distributions annually, even after he alleged disability, and from the records received, it was distributed 50/50. That and the fact that no W2s were provided, but for 2013, with the claimant listed as a business owner every year, and his reports to providers that [he was] working until sometime in 2017, reflects that he continued to work in that job. The undersigned notes that key items from the tax returns provided have been removed, so the undersigned was unable to ascertain what the claimant might have done. The lack of a form 1125-

> E for all years and the lack of any W2s is suspicious. Using the three tests of SGA for self-employment income, significant services is met, as the business was being run by the claimant and his wife; he admitted that he continued to go there and "watch" the person he hired to run the machines, and the monies the two of them received annually, either by way of wages or officer compensation exceeds statutory SGA amounts.

[13-1] 16 (internal citations omitted).

### 1.     Substantial Services

A claimant who is self-employed in a business that involves the services of more than one person, such as the dry-cleaning business that plaintiff and his wife operated, renders "significant services" to the business if he "contribut[e]s more than half the total time required for the management of the business" or "render[s] management services for more than 45 hours a month regardless of the total time required by the business." 20 C.F.R. § 404.1575(b)(2).

Here, plaintiff told his medical providers on February 1, 2017 that he was working "5 hours 5 days a week" at his dry-cleaning business. [13-6] 553. The ALJ cited this medical report in support of her finding that plaintiff "continued working at his dry cleaning business through at least February 1, 2017." [13-1] 16 (citing [13-6] 555); *see also* [13-9] 814 (plaintiff's report to treater in July 2017 that he "works part time as a dry cleaner"). Plaintiff's statement supports a finding that he was working at least 45 hours per month in February 2017–by which time, plaintiff alleged, his ability to work was severely limited–and it supports a reasonable inference that plaintiff worked at least that amount of hours before and shortly after his alleged onset date.

Additional evidence supports the ALJ's decision. In the work history report submitted with his application—which the ALJ also cited, *see* [13-1] 20–plaintiff indicated that he worked at the dry-cleaning business from 1997 to "present." [13-3] 269. At the hearing, moreover, plaintiff described his work at the business as supervising an employee and "mak[ing] sure that the person I hired was running the machines correctly." [13-1] 68-69. Most notably, and in light of plaintiff's statements to his treaters about continuing to work at the business into 2017, the ALJ directed plaintiff to submit his tax returns. [*Id.*] 16. Although plaintiff submitted returns for the 2013-2017 tax years, none of the returns included a Form 1125-E. This form "explain[s] shareholder compensation for purposes of corporate deductions," *Flannery v. Tune Imports, Inc.*, No. 3:18-cv-584, 2020 WL 2512825, at *7 (M.D. Tenn. May 15, 2020), and documents the percent of time each officer devotes to the business, *see* IRS Form 1125-E.[5] The ALJ reasonably found that plaintiff's failure to provide these critical documents was "suspicious": the forms would have established how much time

---

[5] Available at https://www.irs.gov/pub/irs-pdf/f1125e.pdf (last accessed Oct. 5, 2022)

plaintiff devoted to the business in 2013, 2014, 2015, and 2016–and thus could have refuted plaintiff's testimony, *see* [13-1] 70, that he had not worked regularly since 2013. *See* [*id.*] 16 ("The undersigned notes that key items from the tax returns have been removed, so the undersigned was unable to ascertain what the claimant might have done."). The ALJ was entitled to rely on this hole in the record in deciding that plaintiff had performed substantial gainful activity. Finally, that plaintiff's tax returns did not include a W2 form for any other employee, except in 2013 for his wife, also supported a reasonable inference that plaintiff was involved in the provision of significant services to the business.

### 2. Substantial Income

A self-employed claimant receives a "substantial income" from the business if his "countable income" either exceeds certain monthly average earnings, as defined by 20 C.F.R. § 404.1574(b)(2)(ii), or "is comparable to what it was before [the claimant] became seriously impaired[.]" 20 C.F.R. § 404.1575(c)(2)(ii).

The ALJ first found that plaintiff's income after becoming seriously impaired was comparable to the income he received from the dry-cleaning business before becoming impaired: "Here, the business was the claimant's sole means of livelihood for a number of years before he became seriously impaired, and he continues to receive a comparable livelihood from it after becoming seriously impaired, thus, his income is considered substantial." [13-1] 16. Before making that finding, the ALJ discussed plaintiff's testimony that he had received "payouts of $10,000 to 15,000 for his business." [*Id.*]. The ALJ also cited plaintiffs tax records, none of which "show any wages paid to anyone," but which also showed officer distributions of $43,317 in 2013, $42,500 in 2014, $23,142 in 2015, and $21,250 in 2016. *See* [13-4] 333, 382; [13-5] 404, 477. Finally, it was reasonable for the ALJ to find it "suspicious" that plaintiff did not submit any Form 1125-Es because these forms could have contradicted plaintiff's claim that he was not engaged in substantial gainful activity by establishing exactly how much of the officer distributions went to plaintiff. There was thus substantial evidence for the ALJ's comparability finding.

The ALJ then found, based on a review of "the claimant and his wife's tax returns" that "they received the same amount of distributions annually, even after he alleged disability, and from the records received, it was distributed 50/50." [13-1] 16.[6] This was a reference to plaintiff's and his wife's tax returns from 2013 and 2014, which reported officer distributions of $43,317 and $42,500. The ALJ determined that "the monies the two of them received annually, either by way of wages or officer

---

[6] The 2013 tax records showed that plaintiff and his wife each owned fifty percent of the company's stock. [13-4] 338-39.

compensation exceeds statutory SGA amounts."[7] Because the tax returns supported this determination, the ALJ's finding rests on substantial evidence.

### 3. Plaintiff's Arguments

Plaintiff's opening brief does not challenge any aspect of the ALJ's application of Test One, nor does it dispute the ALJ's specific findings that plaintiff provided substantial services to the business, received comparable income from it both before and after becoming impaired, and had average monthly earnings greater than those set by SSA as substantial gainful activity. *See* [18] 9-13. The only argument plaintiff makes that is even remotely relevant to these rulings is his contention that the ALJ "did not properly assess whether, because of his diminished work responsibilities, [he] received a share of the business profits because he owned the business, not because he performed any activities that were of value to the business." [18] 11. But this argument is refuted by the ALJ's decision, which found that "the medical evidence reflects the claimant continued to work at his dry cleaning business through at least February 1, 2017," and that plaintiff's "reports to his providers that [he was] working until sometime in 2017, reflect[ ] he continued to work in that job." [13-1] 16. The ALJ also cited plaintiff's testimony that he supervised an employee who was responsible for operating the business's valuable machines. [*Id.*]. It is readily apparent, therefore, that the ALJ determined that plaintiff received a share of the profits because of the work he performed for the business, and not simply because he was one of the owners.

The other arguments in plaintiff's opening brief do not support reversing and remanding the ALJ's decision. Plaintiff contends that he "did not perform work that was comparable to that of an unimpaired dry cleaner," and he faults the ALJ for failing to order a study to determine whether plaintiff's earnings were worth those of an unimpaired dry cleaner. [*Id.*] 11-12. But whether plaintiff's work was comparable to that of an unimpaired dry cleaner is relevant only under Test Two, and whether plaintiff's work was worth that of an unimpaired dry cleaner is relevant only under Test Three. *See* 20 C.F.R. § 404.1575(a)(2)(ii)-(iii). Because the ALJ found under Test One that plaintiff engaged in substantial gainful activity, she did not need to consider whether plaintiff also engaged in substantial gainful activity under Tests Two and Three. *See Mickelson*, 2009 WL 4544126, at *4 ("Because the administrative law judge found that plaintiff received a substantial income from his business for significant services rendered and met test one, she did not need to reach tests two or three."); *see also Palmer*, 40 F. App'x at 282 (claimant will be found to "have engaged

---

[7] Plaintiff's fifty-percent share of the 2013 and 2014 officer distributions amounted to $21,658 and $21,250, respectively, and his average monthly earnings were $1,804.83 for 2013 and $1,770.83 for 2014. *See* [13-4] 333, 382. The latter amounts were greater than the average monthly earnings set by the SSA as substantial gainful activity for 2013 ($1,040) and 2014 ($1,070). *See* https://www.ssa.gov/oact/cola/sga.html (last accessed Oct. 6, 2022).

8

in substantial gainful activity if she satisfies *any one* of three tests") (emphasis added).

Although plaintiff raises additional challenges to the ALJ's step one ruling in his reply brief, these arguments are forfeited because they were not raised in the opening brief. *Malgorzata K. v. Kijakazi*, Case No. 20 C 296, 2022 WL 2257122, at *2 (N.D. Ill. Jun. 23, 2022); *see also White v. United States*, 8 F.4th 547, 552 (7th Cir. 2021) ("Arguments raised for the first time in [a] reply brief are waived because they leave no chance to respond.").

Finally, plaintiff's argument that defendant's brief attempted to defend the ALJ's decision on different grounds than those set forth in the ALJ's decision–and thus offers impermissible post-hoc rationalizations for the decision, *see* [27] 2-3– provides no basis to excuse his forfeiture. Plaintiff contends that, because "[t]he ALJ never relied on [his] statements to healthcare providers as a basis for her step one finding," defendant's argument that the medical records support the ALJ's finding that plaintiff was working after his onset date is an impermissible post-hoc rationalization. [*Id.*] 2. If that were an accurate description of defendant's position in this case, then it would be appropriate for plaintiff to respond to that argument in his reply brief with points that were not included in the opening brief. Here, however, the premise of plaintiff's argument is false: the ALJ repeatedly cited plaintiff's statements to his treaters in making her step-one ruling. *See* [13-1] 16. Plaintiff's factually inaccurate challenge to the evidentiary basis for the ALJ's step-one ruling, like the other arguments in his reply brief, could have been raised in his opening brief. By raising those arguments for the first time in reply, plaintiff left defendant "no chance to respond," *White*, 8 F.4th at 552, and forfeited them, *see Malgorzata*, 2022 WL 2257122, at *2.

## Conclusion

For the reasons set forth above, plaintiff's motion for summary judgment [17] is denied, the Acting Commissioner of Social Security's motion for summary judgment [25] is granted, and the SSA's decision denying plaintiff's application is affirmed.

_____
**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: October 11, 2022.**

9